**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| ARIEL SIMPSON, DOMINIQUE BROGDEN, TARA MARTINS, GREGORY SWANN, DANIELLE ROMANOFF and PERRY ROYSTER, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiffs<br><br>     v.<br><br>NISSAN OF NORTH AMERICA, INC, and NISSAN MOTOR CO., LDT.<br><br>     Defendants | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Ariel Simpson, Dominique Brogden, Tara Martins, Gregory Swann, Danielle Romanoff, and Perry Royster ("Plaintiffs"), by and through their attorneys, bring this action against Nissan of North America, Inc. and Nissan Motor Co., Ltd. ("Defendants" or "Nissan"), individually and on behalf of all others similarly situated, and allege as follows:

## I.     INTRODUCTION

1.     Plaintiffs bring this action individually and on behalf of all similarly situated persons ("Class Members") who purchased or leased any 2019 through 2020 Nissan Altima vehicle in the United States ("Class Vehicles") that was designed, manufactured, distributed, marketed, sold or leased by Defendants.

2.     Beginning in 2018, if not before, Defendants knew that the Class Vehicles contain one or more design and/or manufacturing defects that can cause their continuously variable transmission ("CVT") to malfunction ("CVT Defect"). A "CVT" is a type of automatic transmission that does not use conventional gears to achieve the various ratios required during normal driving. Instead, it uses a segmented steel belt between pulleys that can be adjusted to change the reduction ratio in the transmission. This is supposed to occur smoothly and

continuously. Like a conventional transmission, a CVT is electronically controlled by a Transmission Control Module ("TCM").

3. Numerous Class Vehicle owners have reported a significant delay in their Class Vehicle's response while attempting to accelerate from both from a stop and while in motion. This delay in response is often accompanied by the engine revving while the driver depresses the gas pedal with little to no increase in vehicle speed. Class Vehicle owners have also experienced and reported stalling, jerking, lurching, juddering, and/or shaking while operating their Class Vehicles, as well as premature transmission failure.

4. The CVT Defect has been documented to occur without warning during vehicle operation and poses an extreme and unreasonable safety hazard to drivers, passengers and pedestrians for obvious reasons. These safety hazards include being unable to maintain the proper speed to integrate seamlessly into the flow of traffic, especially on highways or freeways, putting drivers at risk of being rear ended or otherwise causing an accident unless they pull off the road.

5. In addition to these obvious safety hazards, the cost to repair the CVT Defect can be exorbitant. The Class Vehicles thus differ materially from the product Nissan intended to sell. Nissan intended to produce vehicles with CVTs that shift smoothly and continuously. Instead, Nissan produced vehicles that do not accelerate when prompted to accelerate, and that shake, shudder, jerk and judder.

6. Plaintiffs are informed and believe, and based thereon allege, that Defendants knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter. Defendants have actively concealed the true nature and extent of the CVT Defect from Plaintiffs and the other Class Members, and failed to disclose it to them, at the time of purchase or lease and thereafter. Had Plaintiffs and prospective Class Members known about the CVT Defect, they would not have purchased the Class Vehicles or would have paid less for them.

7. Plaintiffs are informed and believe, and based thereon allege, that despite notice of the CVT Defect from, among other things, pre-production testing, numerous consumer

complaints, warranty data, dealership repair orders and prior experience with earlier model vehicles with the same or substantially similar CVTs, Defendants have not recalled the Class Vehicles to repair the CVT Defect, have not offered their customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the CVT Defect.

8.      Plaintiffs are further informed and believe, and based thereon allege, that despite being on notice of the CVT Defect, Defendants regularly deny the existence of the CVT Defect until after consumers' five (5) years/60,000 miles New Vehicle Limited Warranty Powertrain Coverage ("Powertrain Warranty") has expired or require payment to repair the CVT Defect even while the Class Vehicles are under warranty.

9.      Nissan knew of and concealed the CVT Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from Plaintiffs and the other Class Members both at the time of sale or lease and thereafter. As a result of their reliance on Defendants' omissions, owners and lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

## II.      PARTIES

### A.      Plaintiffs

### Ariel Simpson (Maryland)

10.      Plaintiff Ariel Simpson is a Maryland citizen who lives in Baltimore, Maryland. In or around June 2019, Ms. Simpson purchased a new 2019 Nissan Altima from Nationwide Nissan in Timonium, Maryland. Prior to purchase, Ms. Simpson spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Nissan on the vehicle and test drove the vehicle. Ms. Simpson was never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle. Had Ms. Simpson been informed that her vehicle suffered from the CVT Defect, she would not have purchased it. Ms. Simpson purchased her vehicle primarily for personal, family or household

purposes. Ms. Simpson's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

11. Ms. Simpson's vehicle has exhibited the CVT Defect on numerous occasions. For example, when attempting to accelerate from a stop or while in motion, Ms. Simpson's vehicle hesitates and feels as if it is slipping. On some occasions to get the vehicle moving she has found it necessary to press the accelerator all the way to the floor; even so, the car will sometimes still will not pick up. Ms. Simpson has also experienced her vehicle jerking.

12. At all times, Ms. Simpson has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Dominique Brogden (Virginia)**

13. Plaintiff Dominque Brogden is a Maryland citizen who lives in Glen Burnie, Maryland. Ms. Brogden purchased a new 2020 Nissan Altima from Passport Nissan in Alexandria, Virginia in 2020. Prior to purchase, Ms. Brogden spoke with the dealer sales representative about the vehicle, inspected the Monroney sticker posted by Nissan on the vehicle and test drove the vehicle. Ms. Brogden was never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle. Had Ms. Brogden been informed that her vehicle suffered from the CVT Defect, she would not have purchased it. Ms. Brogden purchased her vehicle primarily for personal, family or household purposes. Ms. Brogden's vehicle was designed, manufactured, sold, distributed, advertised, marketed, and warranted by Nissan.

14. Ms. Brogden's vehicle has exhibited the CVT Defect on numerous occasions. For example, the vehicle hesitates and feels as if it is slipping when attempting to accelerate from a stop and while in motion, and jerks when it does engage.

15. At all times, Ms. Brogden has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Tara Martins (Massachusetts)**

16.     Plaintiff Tara Martins is a Massachusetts citizen who lives in Plymouth, Massachusetts.  In or around July 2019, Ms. Martins purchased a used 2019 Nissan Altima from Mastria Nissan in Raynham, Massachusetts.  Prior to purchase, Ms. Martins spoke with the sales representative about the vehicle, inspected the window sticker posted on the vehicle and test drove the vehicle.  Ms. Martins was never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle.  Had Ms. Martins been informed that the vehicle suffered from the CVT Defect, she would not have purchased it. Ms. Martins purchased her vehicle primarily for personal, family or household purposes.  Ms. Martins' vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

17.     Ms. Martins' vehicle has exhibited the CVT Defect on numerous occasions.  For example, when attempting to accelerate from a stop or while in motion, Ms. Martins' vehicle hesitates.  At times Ms. Martins has been unable to drive up hills due to loss of power.  Ms. Martins also experiences jerking.  Ms. Martins brought her vehicle to Sullivan Brothers Nissan in Kingston, Massachusetts to complain of the problems she was experiencing.  Ms. Martins also complained directly to Nissan's corporate offices.  However, to date Ms. Martins has not been offered a repair or replacement.

18.     At all times, Ms. Martins has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Gregory Swann (Maryland)**

19.     Plaintiff Gregory Swann is a Maryland citizen who lives in Waldorf, Maryland.  In or around October 2020, Mr. Swann purchased a new 2020 Nissan Altima from Sheehy Nissan in Waldorf, Maryland.  Prior to purchase, Mr. Swann spoke with the sales representative about the vehicle, inspected the Monroney sticker posted on the vehicle by Nissan and test drove the vehicle. Mr. Swann was never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle.  Had Mr. Swann been informed

that his vehicle suffered from the CVT Defect, he would not have purchased it. Mr. Swann purchased his vehicle primarily for personal, family or household purposes. Mr. Swann's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

20.     Mr. Swann's vehicle has exhibited the CVT Defect on numerous occasions. For example, when attempting to accelerate from a stop or while in motion, Mr. Swann's vehicle hesitates. In about August 2022, he took the vehicle to a Nissan dealer who informed him the problem was likely CVT-related. The Nissan dealer did not offer a repair and claimed that the issues Mr. Swann was experiencing were normal for his vehicle.

21.     At all times, Mr. Swann has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Danielle Romanoff (New Hampshire)**

22.     Plaintiff Danielle Romanoff is North Carolina resident who lives in Fayetteville, North Carolina. In the summer of 2020, Ms. Romanoff purchased a new 2020 Nissan Altima from a Nissan dealer in Portsmouth, New Hampshire. Prior to purchase, Ms. Romanoff test drove an example vehicle at a Nissan dealership in North Carolina where she spoke with the sales representative about the vehicle and inspected the Monroney sticker posted on the vehicle by Nissan. Ms. Romanoff was never informed by any Nissan dealer representative in North Carolina or New Hampshire that the vehicle she purchased suffered from the CVT Defect and relied upon this fact in purchasing the vehicle. Had Ms. Romanoff been informed that her vehicle suffered from the CVT Defect, she would not have purchased it. Ms. Romanoff purchased her vehicle primarily for personal, family or household purposes. Ms. Romanoff's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

23.     Ms. Romanoff's vehicle has exhibited the CVT Defect on numerous occasions. For example, Ms. Romanoff has experienced hesitation, particularly when attempting to accelerate at highway speeds, followed by jerking when the vehicle does engage.

24.     At all times, Ms. Romanoff has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**Perry Royster (North Carolina)**

25.     Plaintiff Perry Royster is a North Carolina resident who lives in Hope Mills, North Carolina.  In 2019 Mr. Royster purchased a new 2019 Nissan Altima from Nissan of Lumberton in Lumberton, North Carolina.  Prior to purchase, Mr. Royster spoke with the sales representative about the vehicle, inspected the Monroney sticker posted on the vehicle by Nissan and test drove the vehicle.  Mr. Royster was never informed by the dealer sales representative that the vehicle suffered from the CVT Defect and relied upon this fact in purchasing the vehicle.  Had Mr. Royster been informed that his vehicle suffered from the CVT Defect, he would not have purchased it.  Mr. Royster purchased his vehicle primarily for personal, family or household purposes.  Mr. Royster's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Nissan.

26.     Mr. Royster's vehicle has exhibited the CVT Defect on numerous occasions.  For example, Mr. Royster's vehicle hesitates when attempting to accelerate from a stop or while in motion.  Mr. Royster's vehicle also frequently jerks when attempting to accelerate.

27.     At all times, Mr. Royster has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**B.     Defendants**

28.     Defendant Nissan North America, Inc. ("NNA") is a California corporation with its principal place of business located at One Nissan Way, Franklin, Tennessee 37067 and doing business in Tennessee and throughout the United States.

29.     Founded in 1933 and headquartered in Yokohama, Japan, Defendant Nissan Motor Co., Ltd. ("NML") is a corporation organized under the laws of Japan.  NML manufactures and distributes automobiles and related parts.  It also provides financing services.  NML delivers a comprehensive range of products under various brands that are manufactured in Japan, the United States, Mexico, the United Kingdom and other countries.  NML is the parent and 100% owner of NNA.

30.     At all relevant times, NNA and NML were engaged in the business of designing, manufacturing, marketing, distributing, and selling automobiles, including but not limited to the Class Vehicles, and other motor vehicles and motor vehicle components, in Tennessee and throughout the United States.

31.     Whenever, in this Complaint, reference is made to any act, deed or conduct of Defendants, the allegation means that Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendants.

### III.     JURISDICTION

32.     This is a class action.

33.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs.  This court also has federal question jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' claims under the Magnuson-Moss Act arise under federal law.  This Court has personal jurisdiction over NNA because its principal place of business is in Franklin, Tennessee, and Defendants' otherwise have sufficient minimum contacts with Tennessee, and/or otherwise intentionally avails themselves of the markets within Tennessee, through the promotion, sale, marketing and distribution of their vehicles in Tennessee, so as to render the exercise of jurisdiction by this Court proper and necessary.

### IV.     VENUE

34.     Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within the Middle District of Tennessee.

## V.    NISSAN'S KNOWLEDGE OF THE CVT DEFECT

35.    For years, Nissan has designed, manufactured, distributed, sold, and leased the Class Vehicles.  Upon information and belief, Defendants have sold, directly or indirectly through dealers and other retail outlets, many thousands of Class Vehicles nationwide.

36.    Plaintiffs and Class Members are intended third-party beneficiaries of contracts between Nissan and its dealerships; specifically, they are the intended beneficiaries of Nissan's warranties.  The dealerships were not intended to be the ultimate consumers of the Class Vehicles, and the warranty agreements were designed for and intended to benefit the ultimate consumers only.

37.    The CVT Defect causes the Class Vehicles' to unexpectedly malfunction by hesitating, stalling, jerking, lurching, revving, shaking, juddering and/or failing prematurely.  The CVT Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers due to, *inter alia*, the impact of the Defect on driver's ability operate the Class Vehicle as expected.

38.    Plaintiffs are informed and believe, and based thereon allege, that, prior to placing the Class Vehicles in the stream of commerce, Nissan became aware of the CVT Defect through sources not available to Plaintiffs and Class Members, including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Nissan's network of dealers and directly to Nissan, aggregate warranty data compiled from Nissan's network of dealers, testing conducted by Nissan in response to consumer complaints, and repair order and parts data received by Nissan from Nissan's network of dealers.  On information and belief, Nissan actively monitors and records consumer complaints made to Nissan's network of dealers as well as all service and repair work done related to the CVT Defect at its network of dealers

39.    Nissan's CVT has been plagued with the same or similar recurrent problems (i.e., hesitation, shaking, juddering, premature failure, etc.) for over a decade.  In 2009 Nissan voluntarily doubled the powertrain warranty coverage of 5 years/60,000 miles to 10 years/120,000

miles for a large part of its fleet, including the 2003-2010 Murano; 2007-2010 Versa SL; 2007-2010 Sentra; 2007-2010 Altima; 2007-2010 Maxima; 2008-2010 Altima; and 2009-2010 Cube.[1] Nissan also reported that "in the unlikely event that your vehicle's transmission should need repair beyond the extended warranty period we are working to decrease the cost of repair."[2]

40.     Nissan continued to experience such trouble with its CVTs that in December 2013 Nissan's then-CEO, Carlos Ghosn, announced that Nissan would increase its oversight of CVT supplier JATCO, Ltd.[3]  Nissan further explained that it was necessary to increase its oversight of JATCO because continued customer service issues had begun to cut into Nissan's profits.[4] However, Nissan's vehicles continued to be plagued with CVT issues thereafter.

41.     Technical Service Bulletins ("TSBs") issued by Nissan to its dealers, and other remedial actions it has taken concerning the Class Vehicles and other vehicles with the same or substantially similar CVT, evidence Nissan's knowledge of the CVT Defect.

42.     On information and belief, the 2019-2020 Nissan Altima has a the same or substantially similar transmission as other recent-model Nissan vehicles equipped with a CVT. Nissan has extended the warranty on many of these vehicles from five years/60,000 miles to seven years/84,000 miles and offered to reimburse owners and lessees who paid for transmission-related repairs during the extended warranty period in connection with class action settlements.  *See, e.g., Gann, et al. v. Nissan North America, Inc.*, Case No. 3:18-cv-00966 (M.D. Tenn.) (warranty extension and reimbursement program applicable to 2013-2016 Nissan Altima vehicles equipped with a CVT); *Stringer, et al. v. Nissan North America, Inc.*, Case No. 3:21-cv-00099 (M.D. Tenn.)

---

[1] Frequently Asked Questions, available at:
https://web.archive.org/web/20100323050249/http://www.nissanassist.com/faqs.php?menu=3 (last visited Sep. 12, 2022.
[2] *See* Customer Satisfaction Program, CVT Program Details available at:
https://web.archive.org/web/20100124032242/http:/www.nissanassist.com/ProgramDetails.php?menu=2 (last visited Sep. 12, 2022).
[3] Nissan Presses Jatco to end CVT glitches, Automotive News at:
https://www.autonews.com/article/20131202/OEM10/312029972/nissan-presses-jatco-to-end-cvt-glitches (Dec. 2, 2013).
[4] *Id.*

(warranty extension and reimbursement program 2014-2018 Nissan Rogue and 2015-2018 Nissan Pathfinder vehicles equipped with a CVT).  Nissan has offered no such relief to 2019-2020 Altima owners and lessees.

43.     At least as early as November 8, 2018, Nissan was already replacing CVTs and related components in 2019 Nissan Altima vehicles as evidenced by TSB NTB12-103f, applicable to the 2013-2019 Altima and other CVT-equipped vehicles, which sets forth a procedure for calibrating the transmission control module after a CVT or transmission control module replacement is performed.

44.     On May 31, 2019, Nissan issued TSB NTB18-055c applicable to the 2013-2019 Altima and other CVT-equipped vehicles, which sets forth a service procedure for checking a CVT fluid quick level check.  This TSB indicates each dealer has been shipped two special tools to perform a CVT fluid check, a CVT Charge Pipe Cap Release, and a CVT Oil Level Quick Check Gauge, a specialized type of "dipstick" which allows for exact measurement of transmission fluid level.  On information and belief, it was necessary for Nissan to provide its dealers with these special tools because its CVTs are prone to leaking transmission fluid and their performance is extremely sensitive to the level of fluid present.  Insufficient transmission fluid can cause belt slippage and, ultimately, transmission failure.  On information and belief, transmission fluid is supposed to last all or a substantial portion of the life of a vehicle and not require this type of special monitoring.

45.     A common problem with the CVT is the build up of metal debris that can contaminate the transmission.  On Nissan dealer has warned: "If you don't change your 2019 Nissan Altima transmission fluid, your transmission will have broken metal shavings and alternative corrosive metal spread throughout the big components of your 2019 Nissan Altima."[5] Nissan has been aware of this potential issue for years.  For example, on April 7, 2016 Nissan

---

[5] *See* https://www.nalleynissancumming.com/2019-nissan-altima-transmission.htm (last visited September 20, 2022).

released TSB NTB013b applicable to the 2013-2016 Altima, among other CVT-equipped vehicles, which cautions:

> **IMPORTANT**: Metal debris and friction material may become trapped in the radiator, cooling hoses, bypass valve or external CVT fluid cooler. This debris can contaminate the newly serviced transmission, control valve or torque convertor. In severe cases this debris can block or restrict flow and may cause damage to the newly serviced CVT.

This TSB goes on to advise technicians that when a CVT, control valve or torque convertor replacement is necessary the transmission fluid coolers must be flushed. This TSB was amended to include the 2017-2018 Nissan Altima which, on information and belief, have a CVT that is the same as or substantially similar to the Class Vehicles. *See* TSB NTB15-013e. Thus, Nissan was aware of this issue afflicting its CVT years before release of the Class Vehicles.

46.     On September 16, 2021, Nissan released TSB NTB21-083, applicable to the 2019-2020 Altima, which contains a repair flowchart that tells technicians what repair to perform depending on the symptoms exhibited and the Diagnostic Trouble Codes ("DTC") stored. This TSB indicates that if DTC P17F0 (a code associated with CVT "judder") is stored that the transmission sub-assembly should be replaced. This TSB similarly prescribes replacement of the transmission sub-assembly if there is evidence of CVT belt slippage. TSBs concerning CVT judder referencing DTC P17F0 date back many years, prescribing service procedures for earlier model Nissan CVT-equipped vehicles. *See, e.g.*, TSB NTB15-084b dated April 1, 2016 and applicable to the 2014-2016 Altima. Thus, Nissan was aware of this issue as well years before release of the Class Vehicles.

47.     Nissan has continued to issue TSBs addressing Class Vehicle CVT issues.

48.     On information and belief, Defendants issued the above TSBs to address problems being caused by the CVT Defect. Defendants had and have a duty to disclose the CVT Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Defendants had and have exclusive knowledge and/or access to material facts about the Class Vehicles and their CVTs that were and are not

known to or reasonably discoverable by Plaintiffs and other Class Members; and, because Defendants have actively concealed the CVT Defect from their customers. Further, because the none of the above TSBs were issued as part of a formal recall, they were much more likely to be overlooked by dealers, and unknown to consumers.[6]

## VI.    EXAMPLE CONSUMER COMPLAINTS

49.    Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the CVT Defect.

50.    Nissan monitors consumer complaints made to the National Highway Traffic Safety Administration ("NHTSA"). Federal law requires automakers like Nissan to be in close contact with the NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to the NHTSA, including field reports, customer complaints, and warranty data. *See* Transportation Recall Enhancement, Accountability and Documentation ("TREAD") Act, Pub. L. No. 106-414, 114 Stat.1800 (Nov. 1, 2000).

51.    Automakers have a legal obligation to identify and report emerging safety-related defects to the NHTSA under the TREAD Act's Early Warning Report requirements. *Id.* Similarly, automakers monitor the NHTSA database for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id.* Thus, Nissan knew or should have known of the many complaints about the CVT Defect logged by the NHTSA Office of Defect Investigation (ODI), and the content, consistency, and large number of those complaints alerted, or should have alerted, Nissan to the CVT Defect.

---

[6] When a vehicle identification number is entered into a dealer computer, the dealer is automatically instructed to perform applicable recalls. Dealers generally search for TSBs based on customer complaints, which requires them to often sift through multiple TSBs and attempt to interpret which, if any, are applicable.

52.     The following example complaints filed by consumers with the NHTSA and which continue to accrue demonstrate that the CVT Defect is a widespread, dangerous and unresolved problem that has continued with Nissan CVT-equipped vehicles through time unabated from one model year to the next[7]:

**2016 Nissan Altima**

**NHTSA ID Number: 11044416 Incident Date June 15, 2017:** MY TRANSMISSION STOPPED WORKING WHILE I WAS DRIVING FIRST IN THE CITY AND IT CONTINUED TO WHEN I WENT ON THE HIGHWAY TO THE POINT I HAD NO POWER AND THE WHEN I PRESSED THE GAS NOTHING WOULD HAPPEN. I HAD TO HAVE THE COMPUTER IN THE TRANSMISSION REPLACED AND THE CAR STILL IDLES AS IF IT WILL CUT OFF AT ANY MOMENT. THAT WAS AT 40K AND I JUST HAD TO REPLACE THE O2 SENSOR AT 60K

**NHTSA ID Number: 11061215 Incident Date December 13, 2017:** TL* THE CONTACT OWNS A 2016 NISSAN ALTIMA. WHILE DEPRESSING THE ACCELERATOR PEDAL, THE VEHICLE HESITATED TO ACCELERATE AND FAILED TO DRIVE SMOOTHLY ON OCCASION. THE VEHICLE WAS TAKEN TO OLYMPIA NISSAN (2220 CARRIAGE ST SW, OLYMPIA, WA 98502), BUT WAS NOT DIAGNOSED. WHILE DRIVING AT AN UNKNOWN SPEED, THE ENGINE STALLED WITHOUT WARNING. THE VEHICLE RESTARTED AND ACCELERATED INDEPENDENTLY. THE DEALER WAS NOT CONTACTED. THE VEHICLE WAS NOT REPAIRED. ALSO, WHILE THE VEHICLE WAS BEING DRIVEN, THE RPMS ACCELERATED AND THE VEHICLE FAILED TO OPERATE. THE CONTACT MENTIONED THAT THE SPEED INCREASED TO 40 MPH. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 13,000.

**NHTSA ID Number: 11066036 Incident Date January 30, 2018:** FOR THE SECOND TIME WHILE IN THE MIDDLE OF DRIVING, THIS TIME ON THE FREEWAY, THE CAR WOULD NOT ACCELERATE WHEN THE GAS PEDAL WAS PRESSED. I PRESSED IT ALL THE WAY DOWN AND THE RPM WOULD NOT GO UP AND THE CAR WAS SLOWING DOWN. IT HAPPENED BEFORE ON A LOCAL STREET WITH THE SAME SCENARIO. ON THE FREEWAY I WAS AT 70 MPH WHEN IT HAPPENED AND ON THE LOCAL STREET I WAS AT 35 MPH. IT STARTED ACCELERATING AFTER I HAD TO LET THE CAR CRUISE FOR ABOUT TEN SECONDS AS IT WAS LOSING SPEED. ALSO I AM NOW HAVING TO TAKE THE CAR IN TO SERVICE FOR THE 5TH TIME BECAUSE THE REVERSE BACK UP CAMERA WILL NOT WORK. THE CAMERA GOES BLACK AND NOTHING IS VISIBLE. NISSAN TRIED TO SAY IT WAS BECAUSE OF MY PHONE CONNECTED TO BLUETOOTH IN THE CAR AND TO TRY IT WITHOUT A PHONE CONNECTED. I DID AND IT STILL HAPPENED. I RECORDED A VIDEO OF THE INCIDENT AGAIN BUT IF I CAN'T HAVE A PHONE CONNECTED TO BLUE TOOTH TO

---

[7] Spelling and grammatical mistakes reproduced as in the original.

BE HANDS FREE, THEN I AM VIOLATING THE LAW. I CAN'T SEE BEHIND ME WHICH IS VERY TROUBLESOME WHEN IT IS FOGGY OUTSIDE AND CAN'T SEE VERY WELL OUT THE WINDOWS. I HAVE PROVIDED TO IMAGES. ONE SHOWING NO BLUETOOTH DEVICE CONNECTED AND THE OTHER WITH THE BLACK REVERSE CAMERA. *BF *TR

**NHTSA ID Number: 11097900 Incident Date May 24, 2018:**

WHILE DRIVING ON HIGHWAY THE CAR SLOWED TO APPROX. 40 MPH, WHILE RPM'S REMAINED HIGH. THIS IS THE THIRD TIME IT HAPPENED. SEEMS LIKE TRANSMISSION IS SLIPPING. PULL OVER SHUT VEHICLE OFF AND PROBLEM GOES AWAY. NO CHECK ENGINE LIGHT OR ANYTHING. HAD IT TO SHOP EACH TIME AND DEALER UNABLE TO DUPLICATE. THIS WILL BE THIRD TIME IN SHOP FOR SAME ISSUE

### 2017 Nissan Altima

**NHTSA ID Number: 11132373 Incident Date September 30, 2018:** AS I AM DRIVING DOWN THE INTERSTATE MY VEHICLE STARTS SPIDER AND JERK AND LOSE POWER MAKING IT HARD TO ACCELERATE. THEN BEGINS TO ONLY REV AT A HIGH RPM AND NOT MOVE FORWARD SO I AUTOMATICALLY ASSUME TRANSMISSION AND AFTER FURTHER REVIEW OF CUSTOMER COMPLAINTS AND TECHNICAL SERVICE BULLETINS, I REALIZE THAT THIS HAS BEEN A ISSUE WITH THIS MANUFACTURER FOR MANY YEARS. AND ALSO THAT MANY HAVE BEEN REFUSED SERVICE FROM POWERTAIN WARRANTIES THAT COVER TRANSMISSION ISSUES ON THE VEHICLE!!

**NHTSA ID Number: 11192335 Incident Date March 24, 2019:** THE CVT TRANSMISSION FAILED WHICH TRAVELING ON THE HIGHWAY. CAR DECELERATED ON THE HIGHWAY. I DRIFTED TO AN EXIT AND MANAGED TO GET TO A PARK AND RIDE. THIS PRESENTED A SERIOUS SAFETY ISSUE ON THE HIGHWAY AS I TRIED TO DRIFT ACROSS A SIDE ROAD TO A PARK AND RIDE

**NHTSA ID Number: 11209133 Incident Date September 7, 2018:** TRANSMISSION FAILED ON INTERSTATE AT APPROXIMATELY 70MPH. I WAS TOLD BY THE NISSAN DEALERSHIP GARAGE MANAGER THAT THEY REALLY DON'T KNOW WHY THEY FAIL EXCEPT THAT THEY THINK THE TRANSMISSION OVERHEATS DUE TO UNDERSIZED PUMP AND MESH NOT ALLOWING ENOUGH CIRCULATION. EVERYTHING WAS REPLACED AT NISSAN'S EXPENSE, HOWEVER I HAVE NO CONFIDENCE IN THE REPAIR. WHEN THIS HAPPENED THERE WAS NOT A SINGLE WARNING LIGHT OR MESSAGE THAT APPEARED ON THE DASH.

**NHTSA ID Number: 11210222 Incident Date May 23, 2019:** TAKAKA RECALL I HAVE A 2017 NISSAN ALTIMA THAT STOPS IN MIDLE OF THE HWAY. WHEN I DRIVE AROUND 60 MILES PER HOUR WITH MY 2 KIDS INSIDE. I HAVE TO STOP IN THE SIDE WITH HEAVI TRAFFIC AND WAIT UNTIL HELP ARRIVE. 2 HOURS LATER IN STILL STUCK WITH SCARE KIDS AND I DRIVE THE CAR WHIT SLIPPING TRANSMISION TO

THE NISSAN DEALER WHERE OF COURSE THEY DONT WANT TAKE ANY RESPONSABILTY I FOUND ALL COMPLAINTS ONLINE AND LAWSUITS AGAINST NISSAN FOR THE CVT TRANSMISION AND RECALL HAS TO BE ENFORCED

**2018 Nissan Altima**

**NHTSA ID Number: 11206476 Incident Date May 1, 2019:** DRIVING ALONG INTERSTATE SLOWED DOWN FOR TRAFFIC LIGHT AND WHEN I STEPPED ON THE GAS TO ACCELERATE, VEHICLE WOULD NOT GO EVEN IF THE ACCELERATOR WAS ON THE FLOOR COULD NOT GET ABOVE 40MPH AND RPM WERE BETWEEN 4&5 WAS ALMOST REARENDED BY OTHER TRAFFIC. HAPPENED TWO MORE TIMES ON THE HIGHWAY. ALSO WHEN DRIVING THROUGH SLOW TRAFFIC FEELS AS IF TRANSMISSION IS JERKING AND POWER IS LOST.

**NHTSA ID Number: 11424712 Incident Date June 11, 2021:** TL* ACCORDING TO NISSAN DEALERSHIP MY 2018 NISSAN ALTIMA CVT FAILED. THEY WERE ABLE TO DETERMINED THE FAILED CVT WITH A DIAGNOSIS CODE P17F0. I HAVE 73,694 MILES ON MY CAR AND MY WARRANTY ENDED AT 60,000 MILES. IN PREVIOUS YEARS MODEL OF THE NISSAN ALTIMA THERE WERE RECALLS ON CVT TRANSMISSIONS FOR THE NISSAN ALTIMAS. NISSAN STATED BEING THAT MY CAR IS OUT OF WARRANTY THE ONLY THING THEY CAN DO IS GIVE ME 50% GOOD WILL BECAUSE MY VIN NUMBER IS DIFFERENT FROM THE OTHER NISSAN ALTIMA THAT HAD A FAILED CVT. I DON'T FEEL THAT IT WAS GOOD WILL BEING THAT MY CAR DID NOT REACH 100,000 MILES AND I'M ALREADY HAVING AN ISSUE THAT HAS BEEN A PROBLEM IN THE PAST. I KEEP UP WITH THE MAINTENANCE OF MY VEHICLE VERY WELL AND THIS PROBLEM OCCURRED OUT OF THE BLUE. I ALSO SPOKE WITH NISSAN ABOUT THE CURRENT RECALL ON MY CAR BEING THAT I HAVE TO DRIVE A CAR AROUND AND MY HOOD COULD POSSIBLY FLY OFF AT ANY GIVING TIME. ME BEING A NISSAN CUSTOMER WITH SUCH A DANGEROUS VEHICLE THAT NISSAN CONTINUES TO HAVE ISSUES WITH IS MORE GOOD WILL THAN THEY'VE OFFERED. I HONESTLY WOULD NOT RECOMMEND SUCH AN UNSAFE VEHICLE TO ANYONE WHO IS INTERESTED IN PURCHASING A NISSAN ALTIMA. MY CAR IS FAIRLY NEW AND I'M HAVING CVT ISSUES. MY CAR LITERALLY STOPPED IN THE MIDDLE OF THE ROAD AND WOULD NOT ACCELERATE BECAUSE OF A MECHANICALLY FAILING CVT. I HIGHLY RECOMMEND THAT NISSAN RECALL ANY VEHICLES THAT HAVE CVT ISSUES ESPECIALLY SINCE IT'S BEEN A REPEATING CYCLE. I HOPE THIS DOESN'T GO UNNOTICED. THANK YOU

**NHTSA ID Number: 11430920 Incident Date August 15, 2021:** CVT TRANSMISSION FAILURE WHILE IN TRANSPORT. IT PUT MY FAMILY AT RISK BEING STRANDED ON BUSY HIGHWAY. NO WARNING LIGHTS OR INDICATION OF ISSUE EXCEPT VEHICLE STOPPED PERFORMING EFFECTIVELY. THE DEALER ACKNOWLEDGED ISSUES IN THIS AND OTHER MODELS AND HAD TRANSMISSION REPAIRED AT MY COST. VEHICLE WAS DIAGNOSED BY DEALER WHICH USING OBD THEY FOUND TRANSMISSION FAILURE CODES..

**NHTSA ID Number: 11433309 Incident Date September 3, 2021:** THE CONTACT OWNS A 2018 NISSAN ALTIMA. THE CONTACT STATED THAT WHILE DRIVING APPROXIMATELY 50 MPH, THE VEHICLE SUDDENLY LOST MOTIVE POWER

WITHOUT WARNING. THE CONTACT COASTED TO THE SIDE OF THE ROAD AND WAS UNABLE TO RESTART THE VEHICLE. THE VEHICLE WAS TOWED TO THE DEALER WHO DIAGNOSED THAT THE TRANSMISSION FAILED AND NEEDED TO BE REPAIRED. THE VEHICLE HAD NOT BEEN REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND OPENED A CASE. THE APPROXIMATE FAILURE MILEAGE WAS 69,000.

**NHTSA ID:10955053 Incident Date January 27, 2017:** A NISSAN DEALER HAD PREFORMED A SERVICE CAMPAIGN PC4900 TO MY 2016 NISSAN ALTIMA IT INVOLVED THE CVT TRANSMISSION SOFTWARE AND SINCE THEY DID IT THE CAR IS NOT DRIVING LIKE BEFORE. THE SHIFTING IS SLOWER AND TAKES LONGER TO SHIFT, THE ENGINE IS LOUDER AND REVVING HIGHER AND THE FUEL ECONOMY GOT VERY BAD. CONTACTED THE DEALER AND ASKED IF THIS SERVICE CAMPAIGN CAN BE REVERSED AND THEIR ANSWER WAS "NO" I WILL BE TAKING THE CAR BACK TO THEM HAVE THEM CHECK IT AND ALSO CONTACTED NISSAN CORP AND OPENED A CASE. I HOPE THEY FIX THIS PROBLEM AS SOON AS POSSIBLE

### 2019 and 2020 Nissan Altima

**NHTSA ID Number: 11301211 Incident Date August 2, 2019:** TL* THE CONTACT OWNS A 2019 NISSAN ALTIMA. THE CONTACT STATED WHILE DRIVING 35 MPH, THE VEHICLE STARTED TO HESITATE. THE CONTACT STATED NO WARNING LIGHT WAS ILLUMINATED. THE VEHICLE WAS TAKEN TO LOCAL DEALER MCDONOUGH NISSAN LOCATED AT 1775 AVALON PKWY, MCDONOUGH, GA 30253, (770) 282-5077, WHERE THEY WERE UNABLE TO DUPLICATE THE FAILURE. THE CONTACT STATED THE FAILURE RECURRED AND WAS INTERMITTENT. THE MANUFACTURER WAS INFORMED OF FAILURE. THE FAILURE MILEAGE WAS 8,200.

**NHTSA ID Number: 11425015 Incident Date July 7, 2021:** THE TRANSMISSION FAILED /MALFUNCTIONED. IT'S AVAILABLE FOR INSPECTION UPON REQUEST. MY SAFETY AND THE SAFETY OF OTHERS WAS PUT AT RISK WHEN THE VEHICLE STALLED AT A TRAFFIC LIGHT OR IN THE MIDDLE OF TRAFFIC. TOOK THE VEHICLE TO AUTOZONE TO BE SCANNED AND THEY CONFIRMED IT WAS THE TRANSMISSION. THE VEHICLE HAS NOT BEEN INSPECTED BY THE DEALER YET BECAUSE I WOULD HAVE TO PAID BETWEEN $200-350 TO HAVE THE VEHICLE TOWED TO THE DEALERSHIP WHERE THE VEHICLE WAS PURCHASED WHICH IS TWO HOURS AWAY. THE LOCAL DEALERSHIP CHARGES $130 TO DIAGNOSIS MY VEHICLE. THERE WERE NO WARNING LAMPS OR MESSAGES PRIOR TO THE FAILURE. THE CVT MESSAGE APPEARED ON MY DASHBOARD AFTER THE VEHICLE STALLED AND WOULD NOT ACCELERATE MORE THAN 5 MILES OR WOULD NOT MOVE AT ALL UPON ACCELERATION OF THE GAS. IN ADDITION TO THE CURRENT TRANSMISSION ISSUE, I HAVE ALSO HAD THE BRAKE LIGHT SWITCH ADJUSTED TWICE. THE FAILURE OF THE BRAKE LIGHT SWITCH DRAINED THE VEHICLE BATTERY RESULTING IN HAVING THE BATTERY REPLACED AS WELL.

**NHTSA ID Number: 11463946 Incident Date January 9, 2021:** THE CONTACT OWNS A 2020 NISSAN ALTIMA. THE CONTACT STATED WHILE DRIVING FROM A COMPLETE STOP, THE VEHICLE WOULD HESITATE AND SHUDDER. THERE WERE NO WARNING LIGHTS ILLUMINATED. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS

DIAGNOSED THAT NO ISSUES WERE FOUND; HOWEVER, THE FAILURE REOCCURRED. ADDITIONALLY, THE CONTACT STATED WHILE THE VEHICLE WAS PARKED, SHE SHIFTED INTO DRIVE(D) AND DEPRESSED THE ACCELERATOR PEDAL HOWEVER, THE VEHICLE FAILED TO RESPOND. THE CONTACT WAS UNABLE TO DRIVE THE VEHICLE AFTER SEVERAL ATTEMPTS. THE VEHICLE WAS TOWED TO THE DEALER WHERE IT WAS DIAGNOSED THAT THE TRANSMISSION HAD FAILED. THE DEALER INFORMED THE CONTACT THAT THE VEHICLE WOULD BE REPAIRED AT HER OWN EXPENSE. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE AND THE CONTACT WAS INFORMED THAT THE VEHICLE COULD NOT BE REPAIRED UNDER THE POWER TRAIN WARRANTY DUE TO THE MILEAGE. THE FAILURE MILEAGE WAS APPROXIMATELY 59,000. THE VIN WAS NOT AVAILABLE.

**NHTSA ID Number: 11426927 Incident Date July 29, 2021:** 2020 NISSAN ALTIMA. CONSUMER WRITES IN REGARDS TO TRANSMISSION FAILURE. THE CONSUMER STATED THE VEHICLE WOULD LUNGE FORWARD. THE DEALER COULD NOT DUPLICATE THE FAILURE.

53.     Although Defendants were aware of the widespread nature of the CVT Defect in the Class Vehicles, and the grave safety risk posed by it, Defendants took no steps to notify customers of the CVT Defect or to provide them with any relief.

54.     Customers have reported the CVT Defect in the Class Vehicles to Defendants directly and through its dealers.  As a result of these reports and its own internal testing, among other things, Defendants were fully aware of the CVT Defect contained in the Class Vehicles throughout the Class Period.  Nevertheless, Defendants actively concealed the existence and nature of the CVT Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter.  Specifically, Defendants:

   a.  failed to disclose and/or actively concealed, at and after the time of purchase or repair, any and all known material defects or material nonconformities of the Class Vehicles, including the CVT Defect;

   b.  failed to disclose and/or actively concealed, at and after the time of purchase or repair, that the Class Vehicles and their CVTs were not in good working order, were defective, and were not fit for their intended purpose; and

   c.  failed to disclose and/or actively concealed, at and after the time of purchase or repair, the fact that the Class Vehicles and their CVTs were defective, despite the fact that Defendants learned of such defects as early as 2013, if not before.

55.     Defendants have deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the CVT Defect contained in the Class Vehicles.

56.     Defendants have not recalled the Class Vehicles to repair the CVT Defect, have not offered to their customers a suitable repair or replacement of parts related to the CVT Defect free of charge, and have not offered to reimburse Class Vehicle owners and leaseholders who incurred costs for repairs related to the CVT Defect.

57.     Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

58.     As a result of the CVT Defect, the value of the Class Vehicles has diminished, including without limitation the resale value of the Class Vehicles.  Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's CVT is not defective and will not place vehicle occupants at an increased risk of an accident.  Plaintiffs and Class Members further expect and assume that Defendants will not sell or lease vehicles with known safety defects, such as the CVT Defect, and will disclose any such defect to its customers prior to selling or leasing the vehicle, or offer a suitable repair.  They do not expect that Defendants would fail to disclose the CVT Defect to them, and continually deny the defect.

## VII.    TOLLING OF THE STATUTE OF LIMITATIONS

59.     Plaintiffs and the other Class Members were not reasonably able to discover the CVT Defect, despite their exercise of due diligence.

60.     Despite their due diligence, Plaintiffs and the other Class Members could not reasonably have been expected to learn or discover that they were deceived and that material information concerning the Class Vehicles and their continuously variable transmission was concealed from them.

61.     In addition, even after Class Members contacted Nissan and/or its authorized agents for vehicle repairs concerning the defective nature of the Class Vehicles and their continuously

variable transmissions, they were routinely told by Nissan and/or through their authorized agents for vehicle repairs that the Class Vehicles are not defective.

62.     Hence, any applicable statute of limitation, if any, has been tolled by Nissan's knowledge, active concealment, and denial of the facts alleged herein.  Nissan is further estopped from relying on any statute of limitation because of its concealment of the defective nature of the Class Vehicles and their continuously variable transmissions.

## VIII.    CLASS ACTION ALLEGATIONS

63.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Classes and Subclasses pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

64.     The Classes and Subclasses are defined as:

**Nationwide Class:** All persons or entities who purchased or leased any 2019-2020 Nissan Altima vehicle in the United States.

**Massachusetts Subclass:**  All members of the Nationwide Class who purchased or leased any 2019-2020 Nissan Altima vehicle in the State of Massachusetts.

**Maryland Subclass:**  All members of the Nationwide Class who purchased or leased any 2019-2020 Nissan Altima vehicle in the State of Maryland.

**Virginia Subclass:**  All members of the Nationwide Class who purchased or leased any 2010-2020 Nissan Altima vehicle in the State of Virginia.

**New Hampshire Subclass:**  All members of the Nationwide Class who purchased or leased any 2019-2020 Nissan Altima vehicle in the State of New Hampshire.

**North Carolina Subclass:** All members of the Nationwide Class who purchased or leased any 2019-2020 Nissan Altima vehicle in the State of North Carolina.

65.     Excluded from the Classes and Subclasses are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiffs reserve the right to amend the Class definitions, and to add further subclasses, if

discovery and further investigation reveal that the Class and subclasses should be expanded or otherwise modified.

66. **Numerosity:** Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from, *inter alia*, information and records in Defendants' possession, custody, or control.

67. **Typicality:** The claims of the representative Plaintiffs are typical of the claims of the Classes and Subclasses in that the representative Plaintiffs, like all Class Members, paid for a Class Vehicle designed, manufactured, and distributed by Defendants which is subject to the CVT Defect. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that he has incurred or will incur the cost of repairing or replacing his malfunctioning continuously variable transmission and related parts as a result of the CVT Defect. Further, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all Class Members.

68. **Commonality:** There are numerous questions of law and fact common to Plaintiffs and the Classes and Subclasses that predominate over any question affecting only individual Class Members. These common legal and factual questions include the following:

    a. whether the Class Vehicles suffer from the CVT Defect;

    b. whether the CVT Defect constitutes an unreasonable safety hazard;

    c. whether Defendants know about the CVT Defect and, if so, how long Defendants have known of the Defect;

    d. whether the defective nature of the Class Vehicles' CVT constitutes a material fact;

    e. whether Defendants had and have a duty to disclose the defective nature of the Class Vehicles' CVT to Plaintiffs and the other Class Members;

f.  whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g.  whether Defendants knew or reasonably should have known of the CVT Defect contained in the Class Vehicles before they sold or leased them to Class Members; and,

h.  whether Defendants are liable for the consumer protection, common law and warranty claims asserted herein.

69.     **Adequate Representation:**  Plaintiffs will fairly and adequately protect the interests of the Class Members.  Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

70.     **Predominance and Superiority**:  Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

(Breach of Implied Warranty, Mass. Gen. Laws Ch. 106 § 2-314, *et seq*., on behalf of the Nationwide Class and, in the alternative, the Massachusetts Subclass)

71.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

72.    Plaintiff Tara Martins brings this cause of action on behalf of herself and the Nationwide Class and, in the alternative, the Massachusetts Subclass.

73.    Class Vehicles are "goods" and Nissan is a "seller" and "merchant" within the meaning of Mass. Gen. Laws Ch. 106, § 2-314.

74.    Plaintiff Martins is the intended user and true consumer of the Class Vehicle that she purchased from an authorized Nissan dealership.  She used her vehicle as intended by Nissan and in a manner that was foreseeable.

75.    The implied warranty of merchantability included with the sale of each Class Vehicle means that Nissan warranted that each Class Vehicle: (a) would pass without objection in trade under the contract description; (b) was fit for the ordinary purposes for which the Class Vehicle would be used; and (c) conformed to the promises or affirmations of fact made on the container or label.

76.    The Class Vehicles are not adequately labeled because their labeling fails to disclose the Defect and does not advise consumers of the existence of the danger prior to experiencing the CVT Defect firsthand.

77.    Nissan's actions have deprived Plaintiff and Class Members of the benefit of their bargain and have caused Class Vehicles to be worth less than what Plaintiff and other Class Members paid.

78.    As a direct and proximate result of Nissan's breach of implied warranty, Class Members received goods whose condition substantially impairs their value. Plaintiff Martins and Class Members have been damaged by the diminished value of their Class Vehicles.

79.    Plaintiff Martins and Class Members are entitled to actual damages, including all incidental and consequential damages, resulting from Nissan's breach of the implied warranty.

## SECOND CAUSE OF ACTION

(Violation of the Maryland Consumer Protection Act, Md. Code Com. Law §§ 13-101 *et seq*, on behalf of the Nationwide Class and, in the alternative, the Maryland Subclass)

80.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

81.     Plaintiffs Ariel Simpson and Gregory Swann bring this cause of action on behalf of themselves and on behalf of the proposed Nationwide Class and, in the alternative, the Maryland Subclass.

82.     Nissan is a "person" as that term is defined in Md. Code, Commercial Law section 13-101(H).

83.     Plaintiffs Simpson and Swann, and Class Members, are "consumers" as that term is defined in Md. Code, Commercial Law section 13-101(C)(1).

84.     As described above, Nissan sold vehicles to Plaintiffs Simpson and Swann and Class members even though the vehicles are defective and pose a safety hazard. Nissan failed to disclose its knowledge of the CVT Defect and its attendant risks at the point of sale or otherwise.

85.     Nissan's deceptive acts and practices were willful and knowing because, as alleged above, Nissan has known about the CVT Defect for many years before it began selling Class Vehicles and chose not to disclose the problem to consumers.

86.     Despite its knowledge of the CVT Defect, Nissan chose to conceal information about the defect from Plaintiffs and other consumers. This concealment was misleading and unfair in a material respect because the information concealed, if known, would impact the purchasing decision of a reasonable consumer. Had Plaintiffs Simpson and Swann—or any reasonable consumer—been told that the Class Vehicles contained the CVT Defect, they would not have purchased their Class Vehicles or would have paid less for them.

87.     Because Nissan did not disclose the CVT Defect, however, Plaintiffs Simpson and Swann, and Class Members, have been deprived of the benefit of their bargain and harmed in that they now own defective and unsafe vehicles.

## THIRD CAUSE OF ACTION

(Violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ch. 358-A:2, *et seq.*, on behalf of the Nationwide Class and, in the alternative, the New Hampshire Subclass)

88.     Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

89.     Plaintiff Romanoff brings this cause of action on behalf of herself and the Nationwide Class and, in the alternative, the New Hampshire Subclass.

90.     Nissan sold vehicles to Class Members even though the vehicles are defective and pose a safety hazard.  In doing so, Nissan represented that the Class Vehicles had characteristics and qualities that they did not have; represented that the Class Vehicles were of a higher quality and grade that they actually were; and failed to disclose the CVT defect or the related safety risks.

91.     Since 2009 or earlier Nissan has been aware of the CVT Defect in other Nissan vehicles with substantially similar CVTs.  Despite this knowledge, it chose to conceal information about the defect from Ms. Romanoff and Class Members.  This concealment was misleading and unfair in a material respect because the information concealed, if known, would impact the purchasing decision of a reasonable consumer.  Had Ms. Romanoff—or any reasonable consumer—been told that the Class Vehicles contained the CVT Defect, they would not have purchased a Class Vehicle or paid less for it.

92.     As a direct and proximate result of Nissan's unlawful methods, acts, and practices, Plaintiff Romanoff and Class Members lost money or property because they have purchased and leased vehicles that they otherwise would not have, or in the alternative, would have paid less for. Meanwhile, Nissan has sold more Class Vehicles than it otherwise could have and charged inflated prices for the vehicles, thereby unjustly enriching itself.

93.     Pursuant to N.H. Rev. Stat. Ch. 358-A:10, Plaintiff Romanoff and other members of the proposed New Hampshire Subclass seek appropriate injunctive relief, recovery of actual damages, treble damages, and their reasonable costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

(Violation of Virginia's Consumer Protection Act VA. Code Ann §§ 59.1-196, et. seq.
("VCPA") on behalf of the Nationwide Class and, in the alternative, the Virginia Subclass)

94. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

95. Plaintiff Brogden brings this cause of action on behalf of herself and the Nationwide Class and, in the alternative, the Virginia Subclass.

96. Defendant is a "supplier(s)" under Va. Code Ann. § 59.1-198.

97. The sale of the Class Vehicles to Plaintiff was a "consumer transaction" within the meaning of Va. Code Ann. § 59.1-198.

98. By virtue of the acts and omissions described herein, Defendant violated the VCPA by misrepresenting that the Class Vehicles had certain quantities, characteristics, ingredients, uses, or benefits they do not have; misrepresenting that defective Class Vehicles were of a particular standard, quality, grade, style, or model when they were another; advertising the Class Vehicles with intent not to sell them as advertised; and otherwise using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

99. Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

100. Defendants knew that the Class Vehicles' CVTs suffered from an inherent safety defect, would fail prematurely and were not suitable for their intended use.

101. Defendants were under a duty to Plaintiff and Class Members to disclose the defective nature of the Class Vehicles' CVTs because:

 a. Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVTs;

 b. Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles' CVTs; and

c. Defendants actively concealed the defective nature of the Class Vehicles' CVTs from Plaintiff Brogden and Class Members at the time of sale and thereafter.

102. By failing to disclose the CVT Defect, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

103. The facts concealed or not disclosed by Defendants to Plaintiff Brogden and the other Class Members are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendants' Class Vehicles, or to pay less for them. Had Plaintiff Brogden and other Class Members known that the Class Vehicles suffered from the CVT Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

104. Plaintiff Brogden and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a CVT Defect.

105. As a result of Defendants' misconduct, Plaintiff Brogden and the other Class Members have been harmed and have suffered and will continue actual damages in that the Class Vehicles are defective and require repairs or replacement.

106. Pursuant to Va. Code Ann. § 59.1-204, Plaintiff Brogden seeks monetary relief against Defendants for their willful and knowing misconduct measured as the greater of (a) three times the actual damages or (b) $1,000. Plaintiff Brogden further seeks an order enjoining the acts and practices described above, as well as punitive damages, and attorneys' fees and any other just and proper relief available under Va. Code Ann. § 59.1-204.

## FIFTH CAUSE OF ACTION

(Violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*, on behalf of the Nationwide Class and, in the alternative, the North Carolina Subclass)

107. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

108. Plaintiff Royster brings this cause of action on behalf of himself and the Nationwide Class and, in the alternative, the North Carolina Subclass.

109. North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat §§ 75.1.1 ("NCUDTPA"), prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of the provisions" of the Act. N.C. Gen. Stat. §§ 75-16.

110. As described above, Nissan sold vehicles to Class Members even though the vehicles are defective and pose a safety hazard. Nissan failed to disclose its knowledge of the CVT Defect and its attendant risks at the point of sale or otherwise.

111. Nissan's conduct occurred in the course of its trade or business and thus occurred in or affected "commerce" as defined in N.C. Gen. Stat. § 75-1.1(b).

112. Nissan's deceptive acts and practices were consumer-oriented because they had a broad-range impact on consumers at large, affecting all owners and lessees of the Class Vehicles.

113. As a direct and proximate result of Nissan's unlawful methods, acts, and practices, Plaintiff Royster and Class Members lost money or property because they have purchased and leased vehicles that they otherwise would not have, or in the alternative, would have paid less for. Meanwhile, Nissan has sold more Class Vehicles than it otherwise could have and charged inflated prices for the vehicles, unjustly enriching itself.

114. Nissan's deceptive acts and practices were willful and knowing because, as alleged above, it knew about the CVT Defect for many years before it began selling Class Vehicles and chose not to disclose the problem to consumers.

115. Despite its knowledge of the CVT Defect, it chose to conceal information about the defect from Mr. Royster and other consumers. This concealment was misleading and unfair in a material respect because a reasonable consumer would have been misled by Nissan's conduct. Had Mr. Royster—or any reasonable consumer—been told that the Class Vehicles contained the CVT Defect, he would not have purchased his Nissan Altima.

116.    Pursuant to N.C. Gen. Stat. § 75-16 and § 75-16.1, Plaintiff Royster and other members of the proposed North Carolina Class seek appropriate injunctive relief, recovery of actual damages, treble damages, and their reasonable costs and attorneys' fees.

## SIXTH CAUSE OF ACTION

(Breach of Implied Warranty Under Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* on behalf of the Nationwide Class and, in the alternative, the Massachusetts Subclass)

117.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

118.    Plaintiff Tara Martins brings this cause of action on behalf of herself and the Nationwide Class and, in the alternative, the Massachusetts Subclass.

119.    Plaintiff and Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

120.    Defendants are "supplier(s)" and "warrantor(s)" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

121.    The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

122.    Defendants' implied warranty is an "implied warranty" within the meaning of 15 U.S.C. § 2301(7).

123.    Defendants breached the implied warranty by virtue of the above-described acts.

124.    Plaintiff Martins and the other Class Members notified Defendants of the breach within a reasonable time and/or were not required to do so.  Defendants were also on notice of the CVT Defect from, among other sources, the complaints and service requests they received from Class Members and their dealers.

125.    Defendants' breach of the implied warranty deprived Plaintiff and Class Members of the benefits of their bargains.

126.    As a direct and proximate result of Defendants' breach of the implied, Plaintiffs and the other Class Members sustained damages and other losses in an amount to be determined

at trial. Defendants' conduct damaged Plaintiffs and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, and costs, as well as attorneys' fees and/or other relief as appropriate.

## SEVENTH CAUSE OF ACTION

(Unjust Enrichment behalf of the Nationwide Class and, in the alternative, the Maryland, Massachusetts, Virginia, New Hampshire and North Carolina Subclasses)

127. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

128. Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class and, in the alternative, the Maryland, Massachusetts, Virginia, New Hampshire and North Carolina Subclasses.

129. As described above, Nissan sold vehicles to Class Members even though the vehicles are defective and pose a safety hazard, and Nissan failed to disclose its knowledge of the CVT Defect and its attendant risks at the point of sale or otherwise.

130. As a result of its fraudulent acts and omissions related to the CVT Defect, Nissan charged Plaintiffs and Class Members more than it otherwise could have for Class Vehicles, obtaining monies which rightfully belong to Plaintiffs and Class Members.

131. Nissan appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and Class Members, who, without knowledge of the Defect, paid a higher price for their vehicles than those vehicles were worth.

132. It would be inequitable and unjust for Nissan to retain these wrongfully obtained profits.

133. Nissan's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

134. Plaintiffs and Class Members are entitled to restitution of the profits Nissan unjustly obtained, plus interest.

## EIGHTH CAUSE OF ACTION

(Fraudulent Omission behalf of the Nationwide Class and, in the alternative, the Maryland, Massachusetts, Virginia, New Hampshire and North Carolina Subclasses)

135.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

136.    Plaintiffs bring this cause of action on behalf of themselves and the Nationwide Class and, in the alternative, the Maryland, Massachusetts, Virginia, New Hampshire and North Carolina Subclasses.

137.    Defendants knew that the Class Vehicles suffered from an inherent defect, were defectively designed and/or manufactured and were not suitable for their intended use.

138.    Defendants concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Vehicles and their CVTs.

139.    Defendants were under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Vehicles' CVTs because:

   a.   Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' CVTs;

   b.   Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their CVTs have a dangerous safety defect until after they purchased or leased the Class Vehicles;

   c.   Defendants knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the CVT Defect prior to purchase or lease; and

   d.   Defendants actively concealed the defective nature of the Class Vehicles' CVTs from Plaintiffs and Class Members at the time of sale and thereafter.

140.    The facts concealed or not disclosed by Defendants to Plaintiffs and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendants' Class Vehicles or pay a lesser price for them.

Had Plaintiffs and Class Members known about the defective nature of the Class Vehicles' CVTs, they would not have purchased or leased them, or would have paid less for them.

141.    Defendants concealed or failed to disclose the true nature of the design and/or manufacturing defects contained in the Class Vehicles' CVTs in order to induce Plaintiffs and Class Members to act thereon.  Plaintiffs and the other Class Members justifiably relied on Defendants' omissions to their detriment.

142.    Defendants continued to conceal the defective nature of the Class Vehicles' transmissions even after Class Members began to report the problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem today.

143.    As a direct and proximate result of Defendants' misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

144.    Plaintiffs and Class Members are entitled to actual damages, exemplary damages, appropriate equitable relief as well as attorneys' fees and expenses as a result of Defendants' fraudulent conduct.

## RELIEF REQUESTED

145.    Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court enter judgment against Defendants, and issue an order providing the following relief:

a.    certifying the proposed Class and Subclasses, designating Plaintiffs as a named representatives of the Classes, and designating the undersigned as Class Counsel;

b.    a declaration that Nissan is financially responsible for notifying all Class Members about the defective nature of the CVT in the Class Vehicles;

c.    an order directing Defendants to provide notice, in a form pre-approved by the counsel identified below, to all current owners or lessees of the Class Vehicles, and in the said notice offer to replace the defective CVT contained in every Class Vehicle with a non-defective CVT;

d.      an order directing Defendants to provide notice, in a form pre-approved by the counsel identified below, to all current owners and lessees of the Class Vehicles, of an appropriate warranty extension of the Class Vehicles' CVT and related components;

e.      an order directing Defendants to offer reimbursement to all current and former owners and lessees of the Class Vehicles, for all expenses already incurred as a result of the CVT Defect, including but not limited to repairs, diagnostics, and any other consequential and incidental damages (*e.g.* towing charges, vehicle rentals, etc.);

f.      an order directing Defendants to immediately cease the sale and leasing of the Class Vehicles at authorized Nissan dealerships nationwide without first notifying the purchasers of the CVT Defect, and otherwise immediately cease to engage in the violations of law as set forth above;

g.      damages and restitution in an amount to be proven at trial;

h.      any and all remedies provided pursuant to the state consumer protection laws, implied warranty laws, the Magnuson-Moss Warranty Act and under common law fraud and unjust enrichment;

i.      an award to Plaintiffs and the Class of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

j.      that Defendants disgorge, for the benefit of the Class, all or part of the ill-gotten profits they received from the sale or lease of the Class Vehicles, and/or make full restitution to Plaintiffs and Class Members;

k.      an award of attorneys' fees and costs, as allowed by law;

l.      an award of pre-judgment and post-judgment interest, as allowed by law;

m.      leave to amend the Complaint to add further subclasses and to conform to the evidence produced at trial; and

n.      such other relief as may be appropriate under the circumstances.

## **DEMAND FOR A JURY TRIAL**

146.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

DATED:  September 23, 2022                  Respectfully submitted,


                                           */s/ J. Gerard Stranch, IV*
                                           J. Gerard Stranch, IV (BPR 23045)
                                           Benjamin A. Gastel (BPR 28699)
                                           Anthony A. Orlandi (BPR #33988)
                                           **BRANSTETTER, STRANCH
                                                & JENNINGS PLLC**
                                           223 Rosa L. Parks Avenue, Suite 200
                                           Nashville, Tennessee 37203
                                           Phone: 615-254-8801
                                           Fax: 615-255-5419
                                           gerards@bsjfirm.com
                                           beng@bsjfirm.com
                                           aorlandi@bsjfirm.com

                                           Mark Greenstone (*pro hac vice to be filed*)
                                           Benjamin Donahue (*pro hac vice to be filed*)
                                           **GREENSTONE LAW APC**
                                           1925 Century Park East, Suite 2100
                                           Los Angeles, California 90067
                                           Telephone: (310) 201-9156
                                           Facsimile: (310) 201-9160
                                           mgreenstone@greenstonelaw.com
                                           bdonahue@greenstonelaw.com

                                           *Attorneys for Plaintiff*