UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ARIEL SIMPSON, DOMINIQUE BROGDEN, TARA MARTINS, GREGORY SWANN, DANIELLE ROMANOFF, and PERRY ROYSTER, and NINA FEZZA, individually and on behalf of all others similarly situated,<br><br>  Plaintiffs,<br><br>v.<br><br>NISSAN OF NORTH AMERICA, INC., and NISSAN MOTOR CO., LTD.,<br><br>  Defendants. | Case No. 3:22-cv-00747<br>Judge Aleta A. Trauger |

**MEMORANDUM**

Nissan North America, Inc. ("NNA") has filed a Motion to Compel Arbitration and Stay Litigation (Doc. No. 16), to which the plaintiffs have filed a Response (Doc. No. 23), and NNA has filed a Reply (Doc. No. 28). For the reasons set out herein, the motion will be granted as to gateway issues, without prejudice to the issue of substantive arbitrability.

**I. BACKGROUND**

On September 23, 2022, the plaintiffs filed a putative class action complaint against NNA and Nissan Motor Co., Ltd. pursuant to the consumer protection laws of several states and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301. (Doc. No. 1.) The plaintiffs allege that they and others like them were injured by design and/or manufacturing defects that caused transmission malfunctions in Nissan Altima automobiles. (Doc. No. 22 ¶¶ 1–6.) On January 31, 2023, NNA filed a Motion to Compel Arbitration and Stay Litigation directed at the claims of two of the plaintiffs. (Doc. No. 16.) NNA argues that those plaintiffs—Dominique Brogden and

Perry Royster—signed sales contracts requiring them to submit their claims to arbitration. (Doc. No. 17-1; Doc. No. 17-2.)

The contracts are not entirely identical, but they are essentially the same for the purposes at issue here. Each contract includes a heading with the following language:

RETAIL INSTALLMENT SALES CONTRACT – SIMPLE FINANCE CHARGE
(WITH ARBITRATION PROVISION)

(Doc. No. 17-1 at 2; Doc. No. 17-2 at 2.) Each contract is between the relevant plaintiff, identified as the "Buyer," and a "Seller-Creditor." (*Id.*) Brogden's Seller-Creditor is identified as Passport Nissan of Alexandria in Alexandria, Virginia. Royster's Seller-Creditor is identified as Nissan of Lumberton in Lumberton, North Carolina. (*Id.*) NNA is not a party to either contract. Brogden's agreement includes a choice-of-law provision stating that "[f]ederal law and the law of the state of Virginia apply to this contract," and Royster's has the same provision, but with "North Carolina" in the place of "Virginia." (Doc. No. 17-1 at 2; Doc. No. 17-2 at 3.)

Each contract has a signature block, signed by the relevant plaintiff, explicitly acknowledging the existence of an arbitration agreement later in the contract. (Doc. No. 17-1 at 2; Doc. No. 17-2 at 2.) The arbitration agreements themselves are relatively lengthy, but the key language reads as follows:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. . . .

> This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

(Doc. No. 17-1 at 2; Doc. No. 17-2 at 2.) The plaintiffs filed a Response arguing that arbitration is not required here because, among other things, the relevant agreement was between the plaintiffs and the car dealerships from which they purchased their vehicles—not between them and NNA as the manufacturer. (Doc. No. 23.)

## II. LEGAL STANDARD

The question of whether these claims must be arbitrated is governed by the Federal Arbitration Act ("FAA"). The FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is a "strong presumption" in favor of arbitration under the FAA. *Huffman v. Hilltop Companies, LLC*, 747 F.3d 391, 393 (6th Cir. 2014). "[A]ny doubts regarding arbitrability should be resolved in favor of arbitration." *Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). Where a litigant establishes the existence of a valid agreement to arbitrate the dispute at issue, the court must grant the litigant's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration. *Glazer v. Lehman Bros., Inc.*, (citing 9 U.S.C. §§ 3–4).

3

### III. ANALYSIS

"[O]nce a motion to compel arbitration is filed, 'the district court [must] refrain from further action'" until that request is resolved. *Southard v. Newcomb Oil Co., LLC*, No. 19-5187, 2019 WL 8111958, at *4 (6th Cir. Nov. 12, 2019) (quoting *Midwest Mech. Contractors, Inc. v. Commonwealth Const. Co.*, 801 F.2d 748, 750 (5th Cir. 1986)). The court's resolution of such a motion will typically take one of three forms, depending on the situation at hand and the text of the relevant agreement. First, the court may conclude that the movant is correct that the claims are subject to compulsory arbitration, in which case the court will grant the motion and refer those claims to arbitration on the merits. Conversely, the court may conclude that the claims at issue *are not* subject to compulsory arbitration, in which case the court will deny the motion and, assuming no appeal is filed, move ahead with litigation. NNA, however, argues that this case requires this court to select the third possible course of action: making no determination at all regarding whether the plaintiff's substantive claims must be arbitrated and, instead, referring that initial question—typically referred to as involving "threshold" or "gateway" issues—to the arbitrator, allowing the arbitrator to then determine, in the first instance, whether the relevant claims should be decided through arbitration, much as a court is often called on to determine whether a particular claim is within its jurisdiction.

#### A. Governing Law

"Normally, it is within the district court's province to 'determine whether the parties have agreed to arbitrate the dispute at issue.'" *Danley v. Encore Cap. Grp., Inc.*, 680 F. App'x 394, 397 (6th Cir. 2017) (quoting *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)). However, contracting parties can bypass that ordinary approach by drafting their agreement to include not only an arbitration clause but also what is typically referred to as a

"delegation provision"—that is, "'an antecedent agreement to arbitrate threshold issues concerning the arbitration agreement." *Becker v. Delek US Energy, Inc.*, 39 F.4th 351, 355 (6th Cir. 2022) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)) (internal brackets omitted). NNA argues that the contracts signed respectively by Brogden and Royster included valid delegation provisions.

The standard for establishing the delegation of threshold issues has been characterized, in the relevant caselaw, as more demanding than the standard for establishing the arbitrability of the underlying claims. For example, the Sixth Circuit has stated that, when the question before the court is substantive arbitrability of a claim itself—that is, when the court is deciding the arbitrability of non-threshold issues—"[a]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). In contrast, when a court considers whether threshold issues have been delegated, it must look to whether that delegation has been "clearly and unmistakably" expressed. *McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

There is some tension in the relevant caselaw regarding these arbitration-specific rules of contractual interpretation that favor one outcome over another. The Supreme Court recently clarified that, under the FAA, "a court must hold a party to its arbitration contract just as the court would to any other kind" of contract, but "a court may not devise novel rules to favor arbitration over litigation." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). Some of the principles that district courts and circuit courts have read into the FAA—particularly the requirement that contractual ambiguity be resolved in favor of arbitration—could be fairly

5

characterized as judge-created, arbitration-specific rules that go beyond the FAA's purpose of "plac[ing] such agreements upon the same footing as other contracts." *Id.* (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010)). Nevertheless, most of the robust caselaw setting forth certain arbitration-specific rules of interpretation has not been expressly overruled.

In any event, the Supreme Court's admonition is a reminder that, whether or not one recognizes special, arbitration-specific rules that might be capable of guiding the court in marginal cases, the court's primary task in considering a delegation provision or arbitration clause is simply to apply the ordinary law of contract to the particular issue at hand. *Id.* Arbitration-specific rules come into play not as exceptions to ordinary, substantive contract law, but because, when a motion to compel arbitration has been filed, there is a need to determine which issues are appropriate for the court to consider prior to any referral and which should be referred.

The Sixth Circuit has held that, if the question presented is whether the relevant agreement delegates threshold issues to arbitration, the only arguments appropriate for consideration by the court are those that "rest, in [whole or in] part, on different factual or legal grounds than the ones supporting [the nonmovant's] challenge to the arbitration agreement as a whole." *Becker*, 39 F.4th at 356 (citing *In re StockX Customer Data Sec. Breach Litig.*, 19 F. 4th 873, 887 (6th Cir. 2021)). That is not because arguments that apply equally to both provisions are necessarily incorrect or destined to fail; they simply must, in the first instance, be decided by an arbitrator. Otherwise, the court's ruling on delegation would also be a ruling on arbitrability—precisely what the delegation provision was intended to prevent.

6

Each of the arbitration provisions at issue in this case expressly delegates disputes regarding "the interpretation and scope of th[e] Arbitration Provision, and the arbitrability of the claim or dispute" to the arbitrator. (Doc. No. 17-1 at 2; Doc. No. 17-2 at 2.) Nevertheless, the plaintiffs argue that the court should not treat the issues they have raised as delegated for three related reasons: first, "the delegation clause is inconsistent with the severability clause in the arbitration agreement, which implies that a court, and not an arbitrator, will determine issues of validity and enforceability"; second, the delegation provision is "silen[t] with respect to enforceability"; and, third, the delegation clause "specifically limits enforcement to a set of individuals or entities that does not include Nissan." (Doc. No. 23 at 4.)

### B. Consistency with Severability Clause

The severability clause that the plaintiffs argue is inconsistent with the delegation provision reads as follows: "If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable." (Doc. No. 17-1 at 2; Doc. No. 17-2 at 2.) On its face, that language does not say anything about the delegation of threshold issues to the arbitrator. Nevertheless, the plaintiffs argue that the provision's "reference to 'a case' is a reference to a lawsuit pending in a court," which, the plaintiffs argue, "defeats any argument that the parties clearly and unmistakably intended all issues of arbitrability—and particularly the issue of enforceability—to be decided by the arbitrator." (Doc. No. 23.)

The court will address the specific question of whether the delegation provision covers issues of "enforceability" in the next section. The plaintiffs' argument that the mere use of the word "case" in the severability clause is enough to create actual inconsistency with an express delegation of threshold issues is, however, unavailing. For one thing, it is simply not true that the

7

word "case" necessarily refers to a case in court. The American Arbitration Association's Consumer Arbitration Rules, for example, use the word "case" to refer to matters in arbitration dozens of times.[1] Just as importantly, it would fly in the face of the ordinary rules of contractual interpretation to rely on something subtly "implied" by one contractual provision to effectively repeal another provision that directly and explicitly covers the issue that has been raised.. *See, e.g.*, *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 709 S.E.2d 163, 170 (Va. 2011) ("[W]here there are two clauses in any respect conflicting, that which is specially directed to a particular matter controls . . . .") (quoting *Mut. Life Ins. Co. of N.Y. v. Hill*, 193 U.S. 551, 558 (1904)).

    Moreover, even if one were to read the severability clause as specifically contemplating the possibility of court proceedings on the topic of enforceability, that would not mean that the parties actually agreed that such proceedings would or should take place. The interplay between the FAA and the class action rights secured by Rule 23 of the Federal Rules of Civil Procedure has been a subject of frequent litigation and ongoing jurisprudential development. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1625 (2018); *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013); *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 59 F.4th 1090, 1100 (10th Cir. 2023) (distinguishing *Am. Exp. Co.*) (cert. petition filed). A party surveying that landscape could be reasonably uncertain whether a particular, later-arising dispute would necessarily be treated by the courts as subject to arbitration. Contracting parties are permitted to account for such uncertainty, and one way of doing so would be to provide that *if* an issue is decided by a court, and *if* the court rules a particular way, then certain rights or procedures will be triggered. That would not mean that the parties agreed that the issue would be decided by a court—only that they acknowledged that it might be.

---

[1] Available at https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf.

For multiple reasons, then, the severability clause provides no basis for disregarding an otherwise applicable delegation provision. That does not mean that the contracts at issue in this case necessarily require the delegation of any particular threshold issue to the arbitrator. That question is governed by the delegation provision itself. Insofar as the delegation provision does appear to require the referral of an issue, however, the severability clause presents no obstacle.

## C. Whether the Delegation Provision Reaches Issues of "Enforceability"

Delegation provisions are often discussed in an either-or manner—as if there either is one or there is not, with no additional complexity. In this area, however, the Supreme Court's reminder that arbitration agreements are ordinary contracts demonstrates why that assumption is not necessarily true. *See Morgan*, 142 S. Ct. at 1713. There is, after all, more than one type of threshold issue, and contracting parties can treat each type of issue differently, if they so choose. Some threshold issues involve "generally applicable state-law contract defenses" to the validity or enforceability of a contract—such defenses as "fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). Other threshold issues involve the interpretation of the arbitration provision and its scope. *See Boykin v. Fam. Dollar Stores of Michigan, LLC*, 3 F.4th 832, 843 (6th Cir. 2021). Parties might delegate all of these issues to an arbitrator, or some of them, or none of them.

This particular contract, by its terms, delegates two general categories of threshold issues to the arbitrator: (1) those involving the "interpretation and scope of this Arbitration Provision"; and (2) those involving the "arbitrability of the claim or dispute" at hand. (Doc. No. 17-1 at 2; Doc. No. 17-2 at 2.) The first of those categories is, by the ordinary meaning of its language, unrelated to questions of "enforceability"; rather, it involves interpreting the boundaries of an

9

arbitration provision already assumed to be enforceable in some way. The extent to which this provision delegates issues of "enforceability" to an arbitrator depends, therefore, on whether enforceability is encompassed by the second category of delegated issues, "arbitrability of the claim or dispute."

A review of caselaw confirms that, in the ordinary and accepted terminology of arbitration law, "arbitrability" does, in fact, include questions of enforceability. For example, the Supreme Court has held that the "presumption of arbitrability applies even to disputes about the enforceability of the entire contract containing the arbitration clause." *Granite Rock*, 561 U.S. at 298. Similarly, the Sixth Circuit has referred to issues of "enforceability" as involving "gateway arbitrability issues." *Swiger v. Rosette*, 989 F.3d 501, 506 (6th Cir. 2021) (*Danley v. Encore Cap. Grp., Inc.*, 680 F. App'x 394, 398 (6th Cir. 2017)).

Moreover, the fact that the delegation provision applicable in this case lists issues of arbitrability separately from issues of interpretation and scope suggests that the concept of "arbitrability" addresses more than simply the question of whether a claim falls inside or outside the boundaries of the underlying arbitration clause. The most straightforward reading of such language would include issues of enforceability. The court therefore cannot conclude that the parties failed to clearly and unmistakably agree to delegate issues of enforceability to the arbitrator.

### D. NNA's Status as a Third Party

The question of whether the parties' disagreement regarding NNA's third-party rights involves "enforceability" might, on a blank slate, be debatable. The Sixth Circuit, however, has already held that "[w]hether a nonsignatory can enforce the arbitration agreement is a question of the enforceability of the arbitration clause, as to that defendant." *Swiger*, 989 F.3d at 507

10

(quoting *De Angelis v. Icon Ent. Grp. Inc.*, 364 F. Supp. 3d 787, 796 (S.D. Ohio 2019)). District courts have applied that rule in situations that, like this one, raised the question of whether a vehicle manufacturer can rely on an arbitration clause in a sales contract. *See, e.g.*, *Cunningham v. Ford Motor Co.*, No. 21-CV-10781, 2022 WL 2819115, at *4 (E.D. Mich. July 19, 2022) ("Because the Delegation Clause delegates questions of arbitrability to the arbitrator, it is for the arbitrator, not this Court, to decide whether Ford, as a non-party to the Sales Contracts, may compel [the plaintiff] to arbitrate their claims. The Sixth Circuit's decision in *Swiger* compels that conclusion."); *Lyman v. Ford Motor Co.*, No. 21-CV-10024, 2022 WL 856393, at *4 (E.D. Mich. Mar. 22, 2022) ("Defendant's standing to invoke the delegation provision . . . goes to the enforceability of the whole arbitration agreement. Therefore, it is an arbitrability issue that must go to the arbitrator to decide.").[2]

Although the plaintiffs seek to distinguish those cases, their arguments largely come down to the fact that, in the plaintiffs' view, the contracting parties' intent to limit enforcement of the arbitration agreement to certain parties is *especially* clear in this case. (*See* Doc. No. 23 at 9.) Even if that is true, though, it is not an argument against finding a delegation, because the applicability of a delegation provision does not depend on the merits of the issues being delegated. A delegation provision applies equally to good arguments and to those "that appear 'wholly groundless.'" *Swiger*, 989 F.3d at 505 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019)).

The plaintiffs' position that the arbitration agreement does not reach claims against NNA may well be correct. The arbitration agreement very conspicuously fails to specifically identify

---

[2] *But see Straub v. Ford Motor Co.*, No. CV 21-10634, 2021 WL 5085830, at *6 (E.D. Mich. Nov. 2, 2021) (reaching contrary result), *not followed based on subsequent caselaw*, *Harrison v. Gen. Motors LLC*, No. 21-12927, 2023 WL 315723, at *5 (E.D. Mich. Jan. 19, 2023); *Schoenfeld v. Mercedes-Benz USA, LLC*, 532 F. Supp. 3d 506, 511 (S.D. Ohio 2021) (failing to address *Swiger*, which was decided earlier the same month).

the manufacturer of the purchased vehicle in the group of parties covered by the arbitration clause, despite the fact that lawsuits between vehicle owners and manufacturers are commonplace and foreseeable. Moreover, as the plaintiffs point out, these arbitration agreements, unlike many, include express language stating that arbitration will occur only "at your or our election," which provides further support for the conclusion that NNA, as a third party, was not intended to benefit from the provision. (Doc. No. 17-1 at 2; Doc. No. 17-2 at 2.) These arguments are persuasive. They are not, however, specific to the delegation provision. The reasons why NNA arguably should not be able to rely on that provision are the same as the reasons why NNA arguably should not be able to rely on the arbitration agreement as a whole.

The Sixth Circuit has held that, when a plaintiff "relies on a single circumstance, that [the defendant] is a non-signatory to the . . . agreement, to challenge the enforceability of both the arbitration agreement and the delegation provision," then the court must refer that issue to arbitration in order to avoid prejudging an issue reserved for the arbitrator. *Becker*, 39 F.4th at 356. That rule—combined with the fact that the applicability of a delegation clause must be determined independently of the merits of the request to arbitrate—means that sometimes a court must refer a request to compel arbitration made by a party that seems unlikely to actually have any right to make that request. That is the case here.

**E. The Court's Actions Pending Arbitration**

The FAA instructs that, "upon being satisfied that the issue involved in [a] suit or proceeding is referable to arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. The plaintiffs do not dispute that an order referring threshold issues of

12

the arbitrability of Brogden's and Royster's claims would provide a basis for staying the court's consideration of those claims. The plaintiffs ask, however, that the court not stay its consideration of the other plaintiffs' claims. (Doc. No. 23 at 16.) The defendants have not identified any reason why it would be improper to do so. The court, accordingly, will stay its consideration of the claims stated by Brogden and Royster, but the court will not stay any other aspect of this case.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Compel Arbitration and Stay Litigation (Doc. No. 16) will be granted as to the claims of Royster and Brogden, which the court will refer to arbitration of the threshold issue of arbitrability. The court will stay its consideration of those claims.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge